GRENVILLE H. NORCROSS & another, trustees, & others, *vs.* BOARD OF APPEAL OF THE BUILDING DEPARTMENT OF THE CITY OF BOSTON.

Suffolk.    November 30, December 1, 10, 1925. — February 27, 1926.

Present: RUGG, C.J., BRALEY, CROSBY, PIERCE, & SANDERSON, JJ.

*Zoning.   Boston.   Statute,* Repeal by implication.   *Board of Appeal of Building Department of Boston.*

District B in the city of Boston, as established by orders of commissioners appointed under St. 1904, c. 333; St. 1905, c. 383; Spec. St. 1915, c. 333, was abrogated by the provisions of the zoning statute of Boston, St. 1924, c. 488.

The board of appeal of the building department of Boston, after hearing, under St. 1924, c. 488, § 19, an appeal from a denial by the commissioner of buildings of an application for permission to erect a building one hundred and fifty-five feet in height in a "local business" district where buildings of that character were restricted to one hundred feet in height, in a decision, after describing the location and the size of the building, found: "Due to its location the lot is an extremely valuable one and it is located within a half a block of the one hundred and fifty-five foot district.   The neighborhood . . . is rapidly changing for business purposes. . . . the proposed structure is peculiarly adapted to this location. . . . the value of the land . . . is disproportionate to a building of any lesser height than one hundred and fifty-five feet . . . The board . . . were of the opinion that the nature and occupancy of the proposed structure does not derogate from the character of the neighborhood and that they may vary the application of this act in this specific case, wherein its enforcement involves practical difficulties and wherein desirable relief may be granted without substantially derogating from the intent and purpose of this act."   Upon certiorari proceedings under the statute, it was *held,* that   ·

(1) The reasons stated on the record, while not overpoweringly convincing, could not be pronounced erroneous as matter of law;

(2) On the record, the action of the board could not be pronounced without warrant of law.

PETITION, filed in the Supreme Judicial Court for the county of Suffolk on August 21, 1925, for a writ of certiorari, directing the defendants to certify their orders and proceedings with reference to the granting of an application by William J. Stober for permission to erect a hotel one hundred fifty-five feet in height at the corner of Arlington Street and Newbury Street in Boston, in order that the same might be dealt with as law and justice might require.

Material facts shown by the respondents' return are described in the opinion. The case came on to be heard by *Wait*, J., who reserved it for determination by the full court.

*R. Homans*, (*F. Adams* with him,) for the petitioners.

*J. P. Lyons*, Assistant Corporation Counsel, for the respondents.

*M. Witte* by leave of court submitted a brief as *amicus curiae*.

RUGG, C.J. This is a petition for a writ of certiorari. It is brought under the fifth paragraph of § 19 of c. 488, St. 1924. The pertinent facts are that one Stober owned the lot of land in Boston at the corner of Arlington Street and Newbury Street, bounding on the alleyway between Commonwealth Avenue and Newbury Street. It is directly opposite the Public Garden and is conspicuously located. He applied to the commissioner of buildings of Boston for a permit to erect on his lot a hotel to the height of one hundred and fifty-five feet. His application was refused because the limit of height permitted for any building on that lot by the zoning law of Boston was less than one hundred fifty-five feet, it being within a district denominated as "L–80" on the zoning map filed with the Secretary of the Commonwealth and mentioned in St. 1924, c. 488, § 2. The meaning of "L–80" is that the lot is situated in a so called "local business" district and an eighty foot district as defined in said c. 488, and that under existing laws a building to be erected thereon was limited to one hundred feet in height apart from the proceeding here under inquiry. Stober appealed from the decision of the commissioner to the board of appeal as provided in the first and second paragraphs of § 19 of said c. 488. That board, after due notice and hearing, asserted discretionary power in the premises,

annulled the refusal of the building commissioner and ordered him to grant the permit to erect a building to the height of one hundred fifty-five feet as requested.

The petitioners contend that this decision of the board of appeal was unwarranted in law on the ground that the Stober lot lies within the boundaries of district B of the city of Boston as determined by the commission created by Spec. St. 1915, c. 333, so that the height of a building to be erected thereon could not in any event exceed one hundred feet under St. 1905, c. 383, § 2. It is conceded that this contention is sound if district B, as thus established, continues in full force. But the respondents contend that said district B was abrogated by St. 1924, c. 488. These diverse contentions present the first issue to be decided.

The title of said c. 488 is, "An Act regulating and restricting the use of buildings and premises, the height and bulk of buildings and the occupancy of lots in the city of Boston and for said purposes dividing the city into districts." The first section contains definitions of certain words and phrases in the act. Eight sections follow whereby six "use districts" are established. Each of these districts consists of many separated and generally noncontiguous areas appearing on the zoning map filed in the office of the Secretary of the Commonwealth. Each use district is described at length in different sections of the act with elaborate specifications of the uses permitted and forbidden. Then follow seven sections, being §§ 10 to 16, both inclusive, whereby five so called "bulk districts" are established. In § 10 are these words: "In order to regulate and limit the height and bulk of buildings, the area of yards and other open spaces and the percentage of lot occupancy, the city of Boston is hereby divided into the following classes of bulk districts:

Thirty-five foot districts,

Forty foot districts,

Sixty-five foot districts,

Eighty foot districts,

One hundred and fifty-five foot districts,"

all as appearing on said zoning map. The sections following contain definite specifications as to maximum height of

buildings permissible in each district with other limitations upon buildings not here material. In § 14, respecting "eighty foot districts," are these words: "Height: No building shall exceed the height limit heretofore in effect in district B as established by the commission on height of buildings in the city of Boston under chapter three hundred and thirty-three of the acts of nineteen hundred and four, and as thereafter revised." The same words as to district A are in § 15, respecting "a one hundred and fifty-five foot district."

It is provided in § 22, "In interpreting and applying the provisions of this act they shall be held to be the minimum requirements for the promotion of health, safety, convenience and welfare of the inhabitants of the city of Boston. This act shall not interfere with, abrogate, annul or repeal any statute previously enacted, relating to the use of buildings or premises, provided, however, that where this act imposes a greater restriction upon the use of buildings or premises or upon the height of buildings or requires larger open spaces than imposed or required by such statute, the provisions of this act shall control."

We are of opinion that the district B, as a territorial division regulating height of buildings, established in accordance with earlier statutes, is no longer in existence in view of the general scope and detailed provisions of said c. 488. Manifestly that statute covers a wide field. One of its declared objects is to regulate the height of buildings within designated areas of land. Division of the city is made into territorial units "In order to regulate and limit the height and bulk of buildings." § 10. These territorial units are shown on the zoning map, itself a public document or record. These territorial units are called in the statute "bulk districts," a term under which are grouped various dimensions as to the size of buildings with reference to the size of lots. In each of the sections dealing with particular districts, §§ 11 to 15, height is the first dimension of buildings on which a limitation is placed. Regulation of height is a constant factor in every district, although there is some variation in the order and presence of other features, such as "rear

yards," "side yards," "courts," "set-back" and "building area." Numerous paragraphs of these sections are devoted exclusively to the special subject of height of buildings. The reference in § 14 to the height limit for buildings in district B is to a limit "heretofore in effect," bearing a slight implication that its effect had come to an end as a vital force except for purposes of reference. It was natural to use the preëxisting district B for reference as fixing the permissible height of buildings because within that district B the height of buildings had been limited by a somewhat complicated scheme to from eighty to one hundred feet dependent upon varying conditions. *Ayer* v. *Commissioners on Height of Buildings in Boston*, 242 Mass. 30, at page 32. The Legislature of 1924, having determined to preserve the same height of buildings in " eighty foot district" as had previously been established for district B, it was probably thought easier to refer to district B for the standard than to attempt to restate by incorporating into said § 14 all the conditions whereby the variation between buildings eighty feet in height and buildings one hundred feet in height could be erected. At all events, that was the phraseology adopted in framing § 14. Its effect is to import into the "eighty foot districts" of said c. 488 the height of buildings theretofore established in said district B, but not its territorial boundaries. The provisions of said c. 488 indicate that it was enacted as a zoning act pursuant to Article 60 of the Amendments to the Constitution. *Opinion of the Justices*, 234 Mass. 597. *Inspector of Buildings of Lowell* v. *Stoklosa*, 250 Mass. 52. Seemingly it is the first sweeping enactment of that nature applicable to Boston enacted since the adoption of said article 60. Inconvenience and perhaps uncertainty and conflict might arise in the practical administration of the law if there were two sets of territorial districts, each set having limitations in height of buildings. It was urged in argument at the bar that comparison of the zoning map with districts A and B of earlier statutes disclosed inconsistencies such that both could not well stand together. However that may be, the comprehensive and detailed provisions of the zoning act, said c. 488, compel the conclusion that it was

intended to cover the whole subject of height of buildings founded on territorial districts established by exercise of the police power and to render inoperative previous limitations of that nature based on territorial districts. *Doyle* v. *Kirby,* 184 Mass. 409. *Commonwealth* v. *Commissioner of Banks in re Prudential Trust Co.* 240 Mass. 244, 250. *Cosmopolitan Trust Co.* v. *Suffolk Knitting Mills,* 247 Mass. 530, 534. This principle where applicable overcomes the reluctance of courts to treat a subsequent statute as repealing by implication an earlier one.

The words of § 22, already quoted, narrowing the repealing effect to be given to the act, are confined to those statutes regulating "the use of buildings or premises" and omit mention of those touching height of buildings. A qualification is attached to those words, however, by the proviso to the effect that where " this act imposes a greater restriction . . . [among others] upon the height of buildings . . . the provisions of this act shall control." The implication from the use of these words is that some limitations upon the height of buildings established by earlier statutes remain in force. No exhaustive examination of all statutes, general and special, which may come within the purview of this proviso, is here undertaken. It is manifest that one such limitation established in a different connection is not affected by said c. 488. That is the general limitation contained in the building laws of Boston, to the effect that no building or structure "shall be erected or altered to a greater height than two and one half times the effective width of the street or streets upon which the building or structure stands, and not exceeding one hundred and fifty-five feet in height in any case." St. 1923, c. 462, § 11, amending St. 1907, c. 550, § 18. That statute relates to the safety and structure of buildings. It is designed to promote the public welfare from a standpoint wholly different from that promoted by a zoning law. Its provisions stand in the main quite unaffected by general provisions of law. These two acts are designed to supplement each other and both to be effective throughout. This one respecting height of buildings touches that subject from a divergent angle of approach, and con-

serves the public safety for purposes distinct and separate from those of the zoning law. It is not repealed by any implications of said c. 488. It is not so inconsistent with the zoning act as to require the inference that the Legislature did not intend it to remain in full force. *Eaton, Crane & Pike Co.* v. *Commonwealth*, 237 Mass. 523, 530. The extent to which the board of appeal under the constricted power conferred by St. 1907, c. 550, § 7, may vary, if at all, the peremptory words of this legislative mandate, is not before us for decision now.

It is probable, also, that restriction on height of buildings imposed by the exercise of eminent domain such as St. 1898, c. 452, St. 1899, c. 457, St. 1902, c. 543, are unaffected by the zoning act. It is unlikely that the Legislature would undertake to authorize the giving away of interests in land acquired for the public benefit by the expenditure of public money, or to relax such restrictions. It well may be that restrictions imposed by the park commissioners under statutory authority stand on the same footing. Without further discussion it is apparent that there is ample scope for the operation of the proviso in § 22 even though division B of St. 1904, c. 333, St. 1905, c. 383, and Spec. St. 1915, c. 333, no longer survives as a territorial district for limiting height of buildings.

The result upon this branch of the case is that the effect of the enactment of the zoning law, said c. 488, is to repeal district B of earlier statutes as a territorial division within which the height of buildings is limited as there specified, that the standard as to the height of buildings, varying between eighty and one hundred feet, formerly established for district B, is retained by reference merely to fix that same varying height within the new territorial division created by said c. 488 under the name "eighty foot districts," and that the effect of said c. 488 as to height of buildings is not to repeal other limitations on the height of buildings arising from causes or enactments different from territorial limitations established by exercise of the police power. This may not be a comprehensive test by which all future cases may be determined, but it is sufficient for the present case. It is

obvious that a decision involving the possibility of numerous statutes perhaps diverse in purpose and effect is to be confined to the specific facts presented. *Swan* v. *Justices of the Superior Court,* 222 Mass. 542, 545.

The Stober lot lies within the district where under the general provision of the zoning law the height of building to be erected thereon cannot exceed one hundred feet. The building commissioner rightly refused to grant a permit for the erection of a building of greater height, since he is confined by the limitations found in said c. 488. Stober appealed from that denial to the board of appeal. That board asserted its power to order the grant of a permit for a building one hundred and fifty-five feet in height. That assertion of power rests upon these words of the third paragraph of § 19 of said c. 488: "The board of appeal may vary the application of this act in specific cases wherein its enforcement would involve practical difficulty or unnecessary hardship and wherein desirable relief may be granted without substantially derogating from the intent and purpose of this act, but not otherwise. No such variance shall be authorized except by the unanimous decision of the entire membership of the board . . . ." The board of appeal, respondent in the case at bar, as required by said § 19, set forth on its record, incorporated in the return to this petition, the reasons for its decision. They are in these words: "It appeared at the hearing that the proposed structure in question is a hotel of first class construction on the corner of Newbury and Arlington Streets. There is a set-back restriction of 20 ft. on both sides of Newbury Street, giving an effective width to that street of 110 ft. The size of the building is approximately 90' x 120'. It is an L-80 district and due to the wide streets the height limit allowable is 100 ft. Due to its location the lot is an extremely valuable one and it is located within half a block of the 155 ft. district. The neighborhood and the whole of Newbury Street for a considerable distance is rapidly changing for business purposes. The 155 ft. district extends down Boylston Street opposite the Public Gardens and the proposed structure is peculiarly adapted to this location. Due to the value of the land,

which is disproportionate to a building of any lesser height than 155 ft. the appellant wishes to carry the proposed structure to that height. The Board, having viewed the premises and having listened to very able arguments and statements both for and against the appeal, were of the opinion that the nature and occupancy of the proposed structure does not derogate from the character of the neighborhood and that they may vary the application of this Act in this specific case, wherein its enforcement involves practical difficulties and wherein desirable relief may be granted without substantially derogating from the intent and purpose of this Act."

It is manifest from the tenor of the zoning act as a whole, as well as from § 19, that the power of authorizing variations from the general provisions of the statute is designed to be sparingly exercised. It is only in rare instances and under exceptional circumstances that relaxation of the general restrictions established by the statute ought to be permitted. The power granted is only for the relief of specific instances, peculiar in their nature. It does not extend to modifications or changes of essential particulars of the scheme of the zoning act. It does not include immediate or prospective changes in boundary lines of districts. That power is reserved within narrow limits to the board of zoning adjustment under § 20 of said c. 488. The chief purpose of a zoning statute has relation to the public welfare. The protection of health and safety are important factors. The preservation of the property of others in the neighborhood growing out of established restrictions is a matter of importance. These and numerous other considerations must be weighed in passing upon any appeal. "Practical difficulty" or "unnecessary hardship" as applied to restrictions upon the "bulk" of buildings to be erected upon land naturally would be measured from the owner's point of view in terms of dollars and cents. Financial considerations alone, however, cannot govern the action of the board. They are bound to take a broader view than the apparent monetary distress of the owner. Otherwise, there would be no occasion for any zoning law. The height of buildings permitted by the order

here assailed does not exceed the maximum mentioned in St. 1923, c. 462, § 11, and in St. 1924, c. 488, § 15. Whether the proposed building will derogate from the intent and purpose of the zoning act is a question which demands insight, vision, wisdom. It is primarily a question of fact, although it may become a question of law. The reasons stated on the record in the case at bar, while not overpoweringly convincing, cannot be pronounced erroneous as matter of law. With their soundness in point of fact we have nothing to do. Without commenting further on the reasons stated in the record, it is enough to say that, having regard to the nature of the inquiry open under a petition for the writ of certiorari, we cannot quite say that this action of the board appears on the record to have been without warrant in law.

*Petition dismissed.*