Kenneth O. BROWN, Building Commissioner of the City of St. Louis, and the City of St. Louis, a Municipal Corporation, (Plaintiffs) Appellants,

v.

Rudolph BEUC, Chairman, M. A. Beffa, Clarence Ax, Robert Kinealy and L. A. Maginn, in their capacity as Members of the Board of Adjustment of the City of St. Louis, et al., (Defendants) Respondents.

No. 31545.

St. Louis Court of Appeals.
Missouri.

Dec. 15, 1964.

Conway B. Briscoe, Jr., Assistant City Counselor, St. Louis, for appellants.

Foster, Vogel & Stroh, St. Louis, for respondents.

RUDDY, Presiding Judge.

This is an appeal by relators, Kenneth O. Brown, acting Building Commissioner of the City of St. Louis, Missouri; and the City of St. Louis, Missouri, a municipal corporation, from a judgment of the Circuit Court in a certiorari proceeding affirming an order of respondents, Rudolph Beuc, Chairman, M. A. Beffa, Clarence Ax, Robert Kinealy and L. A. Maginn, who constitute the Board of Adjustment of the City of St. Louis, Missouri, (hereinafter referred to as the Board) an administrative body duly appointed, authorized and acting under and by virtue of the provisions of the "Zoning Code" which is embodied in the Revised Code of the City of St. Louis (1960).

The property involved in the order of the Board is known and numbered as 3820 Westminster Place and is owned by the Moolah Temple Association, (hereinafter referred to as Moolah) a not for profit corporation. The Moolah Temple in the City of St. Louis is owned by Moolah and is located on McPherson Avenue, a street immediately south of Westminster Place. 3820 Westminster Place is located in City Block 3925 on the south side of the street between Spring Avenue to the east and Vandeventer Avenue to the west. From Spring Avenue west to Vandeventer Avenue the uses and foot frontage on the south side of Westminster Place are as follows: Rear of Coronado Hotel 112 feet, Daniel Boone Parking Lot 65 feet, Lindell Tower Parking Lot 60 feet, Moolah Parking Lot and New Moolah Building (3820 Westminster Place) 762 feet, residence 37 feet, offices 48 feet. The depth of the lot is 134 feet 6 inches from Westminster Place southwardly to an alley.

Thomas J. Neenan, City Counselor, John J. Fitzgibbon, Associate City Counselor,

Prior to the filing of the application that preceded this certiorari proceeding special

use permits (Nos. 52453 and 59186) were issued by the Board of Public Service of the City of St. Louis authorizing Moolah as owner of the lot under consideration (3820 Westminster Place) to use the lot (in a residential zone) for off-street parking, subject to Moolah observing certain conditions. Under condition No. 3 Moolah was required to observe a 25 foot front yard line (Sec. 904.060 Zoning Code) which had the effect of prohibiting parking beyond or north of the 25 foot front yard line.

The lot in question is located in the "E" Multiple Family Dwelling District and said district is regulated by the provisions of Chapter 908 of the "Zoning Code" of the City of St. Louis. Section 908.070 sets forth the front yard area for the "E" Multiple Family Dwelling District as follows:

"908.070 Front yard area—The front yard regulations are the same as those in the 'A' Single-Family Dwelling District. (see chapter 904.)"

The front yard regulations for the "A" Single Family Dwelling District appear in § 904.060 of the Zoning Code and are as follows:

"a. When twenty-five percent (25%) of the frontage within any dwelling district on one side of the street between two intersecting streets is improved with dwellings and a majority of such improved frontage has observed a front yard line with a variation in depth of not more than six (6) feet, no building hereafter constructed shall project beyond the average front yard line so established, but this shall not be construed to require a front yard of more than fifty (50) feet in depth.

"b. In all other cases there shall be a front yard of not less than twenty-five (25) feet."

It is conceded that Par. "b" of § 904.060 of the Zoning Code is applicable to the lot in question and that said lot requires a front yard of not less than twenty-five feet. As will be pointed out later the Board found that a front yard of 25 feet is required under this provision of the Zoning Code.

Section 903.080 establishes the off-street parking and loading requirements. The provision thereof pertinent to the dwelling district in which the lot in question is located is as follows:

"(3) Off-street parking or off-street loading, when provided in a dwelling district shall not extend beyond the building line or in the front yard area as set forth in the front yard area regulations of the district in which it is located. When provided in other districts it may occupy any open land, including front yards, but no parking structure shall extend beyond the building line in any district. The required parking space shall be paved with bituminous, concrete or equivalent surfacing, clearly marked, and contain adequate entrances and exits, and shall be kept free from dust and be used only for parking. When lighted for night time use, no lights shall be permitted to cast their light upon dwellings nearby. All such parking lots in dwelling districts shall be screened from other uses by a masonry wall or shrub barrier not less than four (4) feet in height and of sufficient density to provide visual concealment."

On or about July 17, 1962, Moolah made application to the Board of Public Service of the City of St. Louis asking it to amend Permits Nos. 52453 and 59186 by eliminating condition No. 3 which required planting strips along the Westminster Place frontage and the observance of the 25 foot front yard line. On September 19, 1962, the Board of Public Service refused the request of Moolah and gave the following as its reason: "This request for amendment was refused because since this is a parking lot in a residential zone, the

Building Commissioner believes that the building line pursuant to the Zoning Ordinance requirements must be maintained, and to permit the Moolah Temple Association to extend their parking lot to the property line is not within the jurisdiction of the Building Commissioner to grant."

Thereafter on October 17, 1962, Moolah appealed the decision of the Board of Public Service and gave as its reason for wanting to extend its present paved parking area 25 feet north to the north property line of the lot in question that "the limited parking area creates a traffic hazard to the entire neighborhood which would be partially alleviated by the granting of this permit."

A public hearing was held by the Board on the appeal and evidence was taken and heard by it which may be reasonably summarized as follows: At the beginning of the hearing the representative of Moolah stated "we are asking permission from this Board to continue the parking lot out to the sidewalk for a number of reasons, *some of which do not comply with the provisions of the ordinance.* The permitted off-street parking space on the lot provided parking space for 249 cars and it was pointed out that if the additional area was given Moolah it would have additional parking space for 87 cars. It was shown that on the street south of the lot in question there were a large number of apartments, business establishments and a hotel. In addition there were the main Moolah Temple, the Medical Society Building and the Odd-Fellows Hall. On the north side of Westminster Place between Spring and Vandeventer Avenues most of the buildings were rooming houses. The evidence at the hearing further showed that the organizations that occupy the buildings on the street south of the lot in question have meetings that attract rather large attendances which create parking problems, which Moolah's representative described as "almost uncontrollable." It is to partially alleviate this parking problem that the request to amend the permit was made. It was

stated that the Moolah Temple Association has 10,000 members. While there are some commercial parking lots on the street to the south of the lot in question and on other streets in the immediate area, they are not adequate or sufficient to meet the demand for parking space. However, it was admitted that even if the amendment to the permit was granted that it would not solve the parking problem, particularly on the evenings when special meetings are held which brings out an overflow crowd. Moolah's representative thought that to extend the present parking facilities to the property line would not only provide additional parking space but would also contribute to the general appearance of the neighborhood. It was also stated by Moolah's representative that the membership of the Medical Society has the same difficult parking problem and that the occupants of some of the apartments nearby were also faced with the problem of parking their cars because, as it was said, "there just isn't any public parking facilities in that area." Moolah's representative also said that "everybody has the same parking problem." It was pointed out by Moolah's representative that the principal parking problem occurs when Moolah has its eight stated meetings during the year.

At these meetings the entire membership is invited and the attendance is between 4000 and 6000. However, it was said that so far as the other nights are concerned the various organizations within Moolah have ample parking facilities. Moolah proposed paving the lot to the property line and establishing no planting strip between the property line and the sidewalk. It was shown that the Lindell Towers and the Daniel Boone Apartments located on the street south of Westminster Place have parking lots on Westminster Place to the east of Moolah's property and they have paved out to the sidewalk. In this connection it was pointed out by the representative of the City of St. Louis and the Board of Public Service that a notice had been

served upon the Lindell Towers and the Daniel Boone Apartments warning them that they are in violation of the Zoning Ordinance.

Pearl Lisle, who lives at 3850 Westminster Place, which is immediately west of the lot in question, said that she has been living there 33 years. When asked by a Board member, "You are stating your objections to these conditions," she answered, "I object to parking cars right next to our front line." She thought parking the cars out to the sidewalk would create a dangerous situation. However, upon further questioning by Board members she finally told the Board that she would not object to parking cars up to the sidewalk if shrubbery was provided.

Thereafter, the Board found from the evidence and the exhibits before it the following:

"1. This is an appeal from the Board of Public Service which allowed a parking lot to be constructed pursuant to its authority under Chapter 915 of the Zoning Code.

"2. The Board of Public Service granted said permit subject to certain restrictions, one of which was the planting of shrubs along Westminster and the east and west lot lines.

"3. The applicant seeks this Board to overrule the decision of the Board of Public Service regarding the shrubs and to allow the parking lot to come out to the property line.

"4. The testimony revealed that the additional 25 feet of parking space was needed to accommodate more cars because of lack of parking facilities in the neighborhood.

"CONCLUSION OF LAW

"1. Premises are located in the 'E' District.

"2. The front yard regulations in the 'E' District are the same as that in the 'A' District.

"3. The 'A' District regulations require a front yard of 25 feet.

"4. Section 903.080(3) of the Zoning Code prohibits parking beyond the front yard area.

"5. Under the powers granted to the Board in Section 916.050(4) of the Zoning Code, the Board finds a practical difficulty and orders the permit to issue subject to the following conditions; that is, that a 4 foot high retaining wall be erected and for this purpose 5 feet of the frontage on Westminster be reserved for this purpose and further a retaining wall 4 feet in height be erected at the east and west lot lines.'

Following the decision of the Board the instant certiorari proceeding was instituted in the Circuit Court. At the hearing in this proceeding no additional testimony was adduced and the matter was heard and submitted to the trial court solely on the evidence presented before the Board. The trial court affirmed the Board in all particulars.

Relators contend that the trial court erred in affirming the decision of the Board granting a variance of the application of Sections 903.080(3), 904.060(b) and 908.070 of the Zoning Code of the City of St. Louis on the ground that a practical difficulty existed within the meaning of § 916.050(4) of the Zoning Code of the City of St. Louis for the reason that there was no practical difficulty proven. In their second contention relators urge that the trial court erred in affirming the decision of the Board granting a variance of the application under the sections enumerated above because the decision was beyond the jurisdiction of the Board and is an attempt to amend the General Rules and Regulations of the Zoning Code which is a legislative function.

Respondents in their brief state these two contentions more concisely, as follows: (1) on the record no "practical difficulty" with-

in the meaning of the Zoning Code was proven or could have been proven; and, (2) the Board, in any event, had no jurisdiction to make the decision complained of.

Section 916.050 of the Zoning Code, subdivision 4 thereof, states that the Board shall have the following powers:

"4. In passing upon appeals, where there are practical difficulties or unnecessary hardships in the way of carrying out the strict letter of the zoning code, to vary or modify the application of any of the regulations or provisions of such code relating to the use, construction or alteration of buildings or structures or the use of land so that the spirit of the code shall be observed, public safety and welfare secured and substantial justice done."

This section of the Zoning Code was enacted pursuant to the provisions of the Enabling Act, viz., Section 89.090 RSMo 1959, 7 V.A.M.S., and the ordinance contains virtually the same language used in the statutory act.

At the threshold of our consideration of these contentions raised by relators it is well to review the rules governing the scope and extent of our authority in reviewing the action of the Board and of the Circuit Court in affirming the action of the Board. We will also review some of the rules that pertain to the authority of the Board to vary or modify the application of any of the regulations or provisions of the Zoning Code and the rules determining the sufficiency of the evidence to support the Board's finding and conclusion of law that a practical difficulty existed.

█ In the case of State ex rel. Nigro v. Kansas City et al., 325 Mo. 95, 27 S.W. 2d 1030, at l. c. 1033, the Supreme Court in discussing the jurisdiction of the Circuit Court in reviewing a decision of a Board of Zoning Appeals said:

"The review of a decision of a board of zoning appeals by the circuit court being purely statutory, the court's jurisdiction in such proceedings does not extend beyond that conferred by the statute. Looking to the statute it is apparent that the court is not vested with the power to supervise the discretion lodged with the board of zoning appeals; it is not authorized to entertain a hearing de novo and then make such order as in its opinion the board should have made. The court's authority is plainly limited to correcting illegality. If the court finds the order under review illegal, in whole or in part, it may reverse or affirm, wholly or partly, or may modify, the order, as may be necessary in order to correct the illegality."

█ Expanding on this statement in the Nigro case we said in Veal v. Leimkuehler, Mo.App., 249 S.W.2d 491, l. c. 495, 496:

"This narrow scope of review, however, must be read in the light of the minimum standard for review provided by Constitution of 1945, art. V, § 22, requiring that the review of all final decisions of any administrative body in which a hearing is required shall include the determination whether the same are 'supported by competent and substantial evidence upon the whole record.' Wood v. Wagner Elec. Corp., 355 Mo. 670, 197 S.W.2d 647. The circuit court may not substitute its own judgment on the evidence for that of the board, Wood v. Wagner Elec. Corp., supra; In re Botz, 236 Mo.App. 566, 159 S.W.2d 367, loc. cit. 373, but the circuit court is authorized to decide whether the board of adjustment reasonably could have made its findings and reached its result upon consideration of all of the evidence before it, and to set aside decisions clearly contrary to the overwhelming weight of the evidence. Mann v. Mann, Mo.App., 239 S.W.2d 543."

Also see Bartholomew v. Board of Zoning Adjustment of Kansas City, Mo.App., 307 S.W.2d 730.

■ The same powers and limitations imposed upon the Circuit Court in its review of the decision of the Board are applicable to this court in our review of the decision of the Circuit Court in the certiorari proceeding. In re Botz, supra; Carlyle-Lowell, Inc., v. Ennis, Mo.App., 330 S.W.2d 164. Therefore, the controlling question on this review is whether the Board has acted arbitrarily or illegally or so unreasonably as to have abused its discretion. Himmel v. Leimkuehler, Mo.App., 329 S.W.2d 264, 268.

■ The power and authority of the Board to grant a variance or modification in the application of the zoning regulations is to be exercised sparingly and only in rare instances and under exceptional circumstances. Marino v. City of Baltimore, 215 Md. 206, 137 A.2d 198; First National Bank and Trust Company of Port Chester v. Zoning Board of Appeals of Greenwich, 126 Conn. 228, 10 A.2d 691, 1. c. 695; Potts v. Board of Adjustment of Borough of Princeton, 133 N.J.L. 230, 43 A.2d 850, 1. c. 855; 101 C.J.S. Zoning § 286, p. 1057; McQuillin—Municipal Corporations, 3rd Ed. Vol. 8, § 25.162, p. 377; Metzenbaum Law of Zoning 2d Ed. Vol. I, Ch. IX–f–1, p. 774. Such observance by the Board is absolutely essential if the integrity of the Zoning Code is to be maintained. To permit any other course would render naught and useless the legislative purpose in enacting the zoning code, viz., to promote the public safety, health, convenience, comfort, prosperity and general welfare (Zoning Code § 900.040).

■ The Board by its order cannot amend or repeal any zoning ordinance or amend or repeal any rule or regulation of the Zoning Code. The power to amend or repeal any provision of the Zoning Code belongs to the legislative body of the City of St. Louis and not to the Board. The Board is without a vestige of legislative power. State ex rel. Nigro v. Kansas City, supra; Shiverdecker v. Zoning Board of Adjustment of Fulton, Mo.App., 351 S.W.2d

43; Himmel v. Leimkuehler, Mo.App., 329 S.W.2d 264, 1. c. 271; Lee et al. v. Board of Adjustment of City of Rocky Mount, 226 N.C. 107, 37 S.E.2d 128; McQuillin—Municipal Corporations, 3rd Ed., Vol. 8, § 25.160, p. 371; Yokley Zoning Law and Practice, 2d Ed. Vol. 1, § 140, p. 344. In State ex rel. Nigro v. Kansas City, supra (27 S.W.2d 1. c. 1032), the Supreme Court when referring to the powers of the Board said:

"The ordinance does not purport to authorize the board of zoning appeals to modify, amend, or repeal any of its provisions; but it does permit and direct the board to modify or partially suspend a rule in its application to a particular case where strict enforcement would 'by reason of exceptional circumstances or surroundings constitute a practical difficulty or unnecessary hardship.' * * * In other words, if in a specific case the enforcement of a regulation according to its strict letter would cause unnecessary hardship and the board can by varying or modifying the application of the regulation obviate the hardship and at the same time fully effectuate the spirit and purpose of the ordinance, they are authorized to so vary or modify the application. But the board can in no case relieve from a substantial compliance with the ordinance; their administrative discretion is limited to the narrow compass of the statute; they cannot merely pick and choose as to the individuals of whom they will or will not require a strict compliance with the ordinance."

Bartholomew v. Board of Zoning Adjustment of Kansas City, Mo.App., 307 S.W.2d 730; Wilson v. Douglas, Mo.App., 297 S.W.2d 588; Berard v. Board of Adjustment of City of St. Louis, Mo.App., 138 S.W.2d 731.

■ The dominant purpose and design of any zoning code is to promote the health, safety, welfare and property of the com-

munity. We said in In re Botz, supra, (159 S.W.2d 1. c. 373):

"The ultimate object and purpose of a comprehensive zoning plan is to confine within established zones or districts all uses of a similar classification, whether residential, commercial, or industrial; and the underlying spirit of such a plan must therefore be to diminish, and not to extend, nonconforming uses of property affected by the zoning ordinance."

As shown before, Moolah in its appeal to the Board sought to eliminate the enforcement of the ordinance that requires a front yard of not less than 25 feet. This front yard requirement of not less than 25 feet in the zone in which Moolah's property is located is a part of a broadly planned and embracing zoning code, the whole of which was plainly meant for and was closely promotive of the general welfare, the public health and the community safety. This provision in the ordinance is a part of a comprehensive zoning plan and is a provision intended for the public safety and good.

■ In the instant case the record shows that Moolah had been given a special permit authorizing it to use the said lot for off-street parking subject to a condition (3) which required it, among other things, to observe a 25 foot front yard line. There is no doubt that the granting of this special permit makes this lot less adaptable now for multiple family dwelling purposes. However, the granting of such an exception does not control the granting of a subsequent variance. Marino v. City of Baltimore, supra; Potts v. Board of Adjustment of Borough of Princeton, supra; McQuillin—Municipal Corporations Vol. 8, § 25.164, p. 383.

■ As heretofore pointed out, the Board found that a practical difficulty existed because of lack of parking facilities in the neighborhood. It will be noted that the Board used the term "practical diffi-culties" and not the term "practical difficulties or unnecessary hardships" as contained in § 916.050, subd. 4 of the Zoning Code. Courts have not regarded the words "practical difficulties" as having any significance in themselves but the phrase "practical difficulties or unnecessary hardships" found in many zoning regulations is usually construed as a whole, 168 A.L.R. p. 26 citing Devaney v. Board of Zoning Appeals, 132 Conn. 537, 45 A.2d 828. Moolah, who sought the variance, had the burden of showing the practical difficulty or unnecessary hardship and had the burden of showing that the property cannot be used for a conforming purpose. There is nothing in the record before the Board and before us to indicate that the special permit which authorizes Moolah to use the lot for off-street parking purposes is to run for a specified period of time. Also, there is nothing in the record to show nor was a finding made by the Board that the lot in question is unsuitable for multiple family dwelling purposes.

■ The sole finding made by the Board in support of its conclusion that a practical difficulty existed was the lack of parking facilities in the neighborhood and for this reason the additional 25 feet of parking space was needed to accommodate more cars. The phrase "practical difficulties or undue hardships" as contained in the Zoning Code does not refer to conditions personal to the owner of the land in question but rather refers to the conditions especially affecting the lot in question. Further, the practical difficulty or undue hardship relied on as a ground for a variance must be unusual or peculiar to the property involved and must be different from that suffered throughout the zone or neighborhood. A statement that summarizes the rule found in numerous cases is contained in McQuillin—Municipal Corporations, Vol. 8, 3rd Ed. at § 25.167 beginning at page 390, wherein it is said:

"It is fundamental that the difficulties or hardships must be unique to

justify a variance; they must be peculiar to the application of zoning restrictions to particular property and not general in character, since difficulties or hardships shared by all go to the reasonableness of the zoning restrictions broadly and render them invalid or call for their modification by amendatory ordinance. In other words, the plight of an applicant for variance must be due to unique circumstances and conditions. The difficulty or hardship of an applicant for a variance, to entitle him thereto, must be special or unique in contrast with that of other property owners in the same district. If the hardship is common to the whole neighborhood, the remedy is to seek a change in the ordinance rather than a variance. Moreover, the hardship must not only be peculiar to the applicant's property but it must relate to the particular property of the applicant for which he seeks a variance."

When we say inherent in the land and that the hardship must be due to conditions not personal to the owner, but rather to conditions affecting the land we mean such hardships as result from the peculiar topography or condition of the land which makes the land unsuitable for the use permitted in the zone in which it lies. Also, as said above, if the hardship is common to the whole neighborhood, the remedy lies in a change in the ordinance itself.

As we have pointed out heretofore, the Board is not a legislative body and cannot correct general hardships and can only grant variances when there are conditions in connection with the lot that will cause practical difficulties or undue hardships not common to others. For cases supporting McQuillin's statement, see In re Botz, supra, 159 S.W.2d l. c. 370; Carlyle-Lowell, Inc. v. Ennis, supra; Marino v. City of Baltimore, supra; Searles v. Darling (Delaware), 7 Terry 263, 83 A.2d 96; Brackett v. Board of Appeal of Building Department of City of Boston, 311 Mass. 52, 39 N.E.2d 956.

We do not have here an issue involving the exercise of discretion by the Board. In fact, relators in their brief agree that there is a lack of parking facilities in the neighborhood but contend that this is not a sufficient basis on which to vary the general rules and regulations of the Zoning Ordinance. We agree with this contention. The record before the Board and before us does not show that the lot in question or any part thereof is subject to any unique or peculiar circumstance or condition.

In the instant case the practical difficulty or undue hardship found by the Board is general and characteristic of the entire neighborhood surrounding the lot in question and, as we have pointed out, under these circumstances the remedy lies in a revision of the Zoning Code through the city legislature and not in the granting of a variance to a single property owner. We can sympathize with Moolah's plight but its plight is common to others in the area of the lot and in other areas of the city and we might add is common to many areas in all large cities. If we were to approve the Board's action in the instant case, there would be no valid reason why it would not also be empowered upon successive applications to grant similar variances and in time would nullify the provisions of the Zoning Code.

Respondents have cited and seem to rely upon the case of Summers v. Board of Zoning Adjustment, Mo.App., 299 S.W.2d 883. In that case a church was granted a permit to use for parking lot purposes certain lots it owned. The permit as granted required that the lots "be hard surfaced, surrounded by a wall not less than 3½ feet in height *and that it set back from Main Street 30 feet and from Baltimore 20 feet, and 6 feet from the north and south property lines*." (l. c. 886) (Emphasis supplied.) The permit granted in the Summers case was the same as the permits granted Moolah in this case, which were obtained prior to the initiation of the in-

stant proceeding. As heretofore set out, the permits received by Moolah required it to comply with the 25 foot front yard line which was similar to the requirement imposed upon the permittee in the Summers case. The permit in the Summers case was issued pursuant to provisions of the Kansas City Zoning Code permitting off-street parking and loading regulations which were similar in effect to § 903.080(3) of the Zoning Code of the City of St. Louis. As we have pointed out, the only issue involved in the instant proceeding is whether or not the Board had the power and authority to extend the off-street parking permission beyond the front yard line in violation of § 903.080(3) of the Zoning Code. This question was not before the court in the Summers case.

There is another compelling reason for holding the action of the Board illegal and it is that the granting of the variance by the Board constitutes a repeal of § 903.080(3) of the Zoning Code. As shown, this provision of the Zoning Code prohibits off-street parking beyond the building line or front yard area as set forth in the district regulations where the property is located; in this case, the "A" district. (Sec. 904.060 subd. b. establishes a 25 foot front yard line.) The effect of the Board's order granting the variance is to completely ignore this provision of that section (903.080(3)) of the Zoning Code. Such action, in effect, constitutes repealing the provision by the Board, which it may not do. As we have pointed out heretofore, the Board by its order cannot amend or repeal any zoning ordinance or amend or repeal any rule or regulation of the Zoning Code. The sole power to do this belongs to the legislative body of the City of St. Louis and not to the Board.

For the reasons indicated heretofore, we find that the Board exceeded its authority in granting the variance and in making its finding and order. Therefore, the judg-

ment of the Circuit Court should be reversed and the cause should be remanded for proceedings in conformity with the views herein expressed. It is so ordered.

WOLFE and ANDERSON, JJ., concur.