**CARLYLE–LOWELL, INC., Appellant,**

v.

**Hugh R. ENNIS et al., Respondents.**

No. 23019.

Kansas City Court of Appeals.

Missouri.

Dec. 7, 1959.

F. Phillip Kirwan, Norman M. Arnell, Kansas City, for appellant.

Richard H. Koenigsdorf, City Counselor, Guy W. Rice, Asst. City Counselor, Solbert M. Wasserstrom, Kansas City, for respondents.

BROADDUS, Judge.

This is an appeal from the judgment of the Circuit Court of Jackson County affirming the decision of the Board of Zoning Adjustment of Kansas City, and arises out of the following facts:

The property here involved is a corner lot having a frontage of 107 feet on Ward Parkway and a frontage of 146.76 feet on Roanoke Road. Since the narrower frontage faces Ward Parkway, the property is considered as fronting on Ward Parkway for zoning purposes.

The lot is irregular in shape, with the front thereof being narrower than the rear. Moreover, the east line is irregular, containing an angle. In addition, the grades of this lot are irregular, with the grade sloping downward from north to south and with a rolling slope from west to east.

Running the entire depth of the lot from north to south there is a 10-foot sewer easement in favor of Kansas City, Missouri, on which the city has constructed a main sewer line 6 feet in diameter.

The property is located in the Plaza District in the midst of an intensively developed apartment area and is zoned, as is all the surrounding property, as R–5, High Apartments.

Despite the fact that this tract is favorably located in an area of such high land value, it has never been developed for any purpose. It has been in the ownership of the Phillips family for many years and is now owned by City Builders, Inc., a Phillips family corporation. In the early 1930's the Phillips family commenced excavation under building plans, but the project proved unfeasible and was abandoned. During the course of the succeeding years, a number of architects submitted plans for development but none of these plans were found to be acceptable.

Finally, in December, 1957, respondent Rechner, a professional real estate agent, conceived a plan for the development of this property as a combination of apartment and commercial use. Rechner's initial plan called for an eleven story structure with a roof garden restaurant, shops and offices on the ground floor, and residential apartments on the intervening floors, all of which would have exterior balconies. Based on these plans, City Builders, Inc., gave Rechner a commitment on the property. Thereupon Rechner filed an application, as "Agent", in the Division of Buildings and Inspections for a building permit, which was refused by the Commissioner of Buildings and Inspections on February 18, 1958.

Respondent Rechner promptly appealed from said refusal to the Board of Zoning Adjustment. The letter of appeal, dated February 19, 1958, is signed "Carl B. Rechner, Agent", and states in part that the refusal of the proposed construction "would be an unnecessary hardship on the property owners."

Between the time that said appeal was filed with the Board and the hearing thereon, Rechner conferred with the Chief Planning Engineer of the city and as a result decided to make certain changes in the plans to eliminate certain features found objectionable by the City Engineer. These changes consisted of eliminating the roof garden restaurant, the ground floor commercial uses, and the exterior balconies.

The matter came on for hearing before the Board on March 11, 1958, pursuant to due notice to all the affected property owners. The applicant Rechner was present in person, and the owners, City Builders, Inc., and Robert L. Phillips, were represented by their counsel, Mr. Reed O. Gentry. In the course of this hearing, Mr. Gentry announced the following on behalf of his clients:

"Mr. Phillips—Mr. Robert L. Phillips, who is the President of the company, is familiar with the circumstances and he joins as the fee owner of the property in this application which is made and, as his counsel, I urge the acceptance on the part of the Board, of this application."

There is a city public park located directly to the south across Ward Parkway opposite the tract here in question and the Board of Park Commissioners by formal action voted that it had no objection to the Rechner plans and that vote was communicated to the City Planning Commission.

The only objector to make an appearance of record was Carlyle-Lowell, Inc., the present appellant. The evidence shows that appellant owns two high apartments directly to the east of the tract in issue. Both of appellant's structures are non-conforming uses which were erected prior to the adoption of the present zoning laws. Appellant's said properties extend to within 10 feet 6 inches of Ward Parkway. Said properties have no off-street parking, except a semi-circular driveway on the Ward Parkway front side, which driveway can accommodate the parking of 18 automobiles, as compared with the requirements of the present zoning ordinance of 84 parking spaces and which, under the present ordinance, should be located in the side or rear yard rather than in the front.

At the conclusion of the hearing on March 11, the Board continued the case to March 25, 1958, and notified Rechner that the purpose of the continuance was "to

give you an opportunity to further consider the possibility of revising the plans presented * * *."

Pursuant to said advice from the Board, Rechner did again revise his plans and at the hearing on March 25, he presented his second revised plans. The further changes contained in the second revision were as follows: (1) The building was to be reduced one story from eleven floors to ten, reducing the number of apartment units from 43 to 39; (2) The building wall on the east side would be moved further to the west, thereby permitting more open space between the proposed building and appellant's building; (3) Two parking spaces were to be eliminated in the basement garage, thereby permitting the depressing of the basement garage by one foot; and (4) The proposed building would be moved back further from the Roanoke Road side.

When this second revision was presented to the Board, Board member Schroeder inquired with respect to building costs as compared to prospective income. Respondent Rechner testified in answer to those questions that the building would consist of one and two bedroom apartments. The one bedroom apartments would be 825 to 850 square feet and would bring a maximum rental of $150 per month, while the two bedroom apartments would be about 1050 square feet and would bring a rental of $190 per month. Rechner further testified that because of the large cost of basic installation, such as heating, air-conditioning and elevators, the reduction of space did not result in a commensurate saving of building costs; by way of illustration, the elimination of the eleventh floor resulted in a reduction of construction costs of only 3 to 4 percent. Board member Bourke inquired particularly about the possibility of reducing construction costs by lowering the height of the ceilings. Respondent Rechner testified in answer to that line of questions that he had provided a ceiling depth of only 8 feet 2 inches and that this was the minimum feasible

height. Rechner further testified that the basement garage could not be depressed any further because of the existence of the sewer, and that under the second revised plans the proposed building was trimmed to a point where "we can't operate on any less."

The Board's order approving the application is as follows:

"The Board of Zoning Adjustment at its meeting on Tuesday, July 15, 1958, *approved* your application to modify certain yard and area requirements of the Zoning Ordinance in order to construct a 10-story, 39-unit apartment building on property located at the northeast corner of Roanoke Parkway and Ward Parkway and as more specifically shown on plans presented to the Board consisting of 5 sheets and identified as Exhibit 'X'. We are forwarding a copy of these plans to the Office of the Commissioner of Buildings and Inspections in order that a permit may be issued."

The Board made the following findings of fact:

"1. The property is in an R-5 (high apartment District.)

"2. The property contains an area of 12,331 sq. feet and is a corner lot of irregular shape.

"3. Applicant proposes to construct a 10-story 39-unit apartment building. One additional apartment is provided in the basement for a custodian.

"4. Fifteen off-street parking spaces will be provided in the basement with access from Ward Parkway. Twelve off-street parking spaces will be provided on the surface level in the rear of the main apartment building with access from Roanoke Parkway. The required number of off-street parking spaces are met. Congestion caused by traffic entering and leaving the property is therefore minimized by this pro-

vision for separate entrances on separate streets for the surface level and basement level parking spaces.

"5. The building will be set 2 feet further back from the property lines than other existing apartments on Roanoke and Ward Parkways within this block.

"6. Property across the street on the south side of Ward Parkway is in permanent open area as a public parkway, thus offering sufficient light and air in relation to the subject property.

"7. A sewer located on the property, limits the basement excavation and thus the basement will extend, at the highest point, three feet above the ground level in the rear of the main apartment building. In order to provide sufficient off-street parking, it is necessary to extend the basement walls in close proximity to the side and rear property lines.

"8. The use of the property corresponds to the use of adjoining property.

"Conclusions of Law:

"Section 65.300 authorizes the Board to act in this matter where undue hardship is shown. The Board finds that the evidence shows there are undue hardships as shown by its findings of fact."

■ The scope of review, by a court, of the decision of an administrative tribunal has been discussed in many decisions. Those decisions hold that the reviewing court may not substitute its own judgment on the evidence for that of the administrative tribunal. But it is authorized to decide whether such tribunal could have reasonably made its findings and reached its result, upon consideration of all of the evidence before it; and to set aside decisions clearly contrary to the overwhelming weight of the evidence.

Appellant contends that the circuit court erred in affirming the Order of the Board and in refusing to hold that the Board acted without jurisdiction in granting its Order because: Respondent Rechner made no showing of exceptional circumstances or surroundings constituting practical difficulty or unnecessary hardship.

Sec. 65.300 of the Ordinances of Kansas City deals with the powers and duties of the Board of Zoning Adjustment and provides that:

"In passing upon appeals from decisions of the commissioner of buildings and inspections, whenever, in any specific case, the board shall find and determine that the application of a general rule or regulation governing the use, construction or alteration of buildings or structures or the use of land, to the particular case under consideration, will, by reason of exceptional circumstances or surroundings, constitute a practical difficulty or unnecessary hardship and that the general purpose and intent of such rule or regulation may be preserved and the health, safety, convenience, comfort, prosperity, or general welfare of the community as heretofore provided, be secured and substantial justice be done, by specific modification or variance of such rule or regulation to the specific case under consideration, the board may make an order varying or modifying such rule or regulation."

■ There is and can be no all-inclusive definition of what constitutes sufficient difficulty and hardship to warrant the granting of a variance under zoning regulations. Whether or not such difficulties and hardships exist is a question of fact as to which the Board, an administrative body, is to be accorded a wide discretion. As stated by Yokley Zoning Law and Practice, 2d Ed., Vol. 1, Sec. 142, p. 350:

■ "In determining whether to authorize a variance from the terms of

the zoning ordinance because of special conditions making enforcement of the ordinance inequitable, the board of appeals is vested with a wide discretion and the courts will not interfere with that discretion unless it is abused."

Similarly McQuillin on "Municipal Corporations," 3rd Ed., Vol. 8, Sec. 25.167, p. 394, states:

"Whether or not an unnecessary hardship exists may be a question of fact to be determined from the particular facts by the zoning board or other appropriate public body or officers."

■ It is clear that here the Board acted well within the broad purview of its discretion described in the foregoing authorities. It cannot be doubted that the most appropriate use for the tract in question is that of high apartments. That is the purpose for which the property is zoned, namely, District R–5, High Apartments. The tract is entirely surrounded by such high apartments. Indeed this property calls for a classification of high apartment use even more than its surrounding properties for the reason that the subject land is located on a double boulevard corner and is, accordingly, more valuable than neighboring properties. Any use other than high apartments would not only be inappropriate but would also be a great sacrifice to the owners. The high apartment use of this land cannot be of any serious detriment to the neighboring land, for the reason that the latter is also zoned for and used as high apartments and because (as the Board found) these properties are protected so far as light and air are concerned, by wide boulevards and the existence of the public park just across Ward Parkway.

However, despite the very obvious appropriateness of high apartment use, this property has been unproductive over the years. One of the difficulties causing this result is that the tract is of irregular shape, with irregular grades, being higher in the north than in the south, and with irregular slopes from the east down toward the west. Also there is a sewer easement along the entire eastern side of the tract, in connection with which the city has installed an underground main sewer 6 feet in diameter. As a result of all of these difficulties, this tract constitutes what was described by witness Duncan as a "cull lot". It is the only tract in the Plaza area which an owner has wanted to develop which has proved until now incapable of development. The owners have never been able until now to make any use of their property despite the attempts by various architects to devise suitable plans. The only common sense conclusion is that the land is subject to practical difficulties which result in unnecessary hardship to the owner.

■ Appellant is incorrect in its contention that financial considerations are never to be taken into account in determining the issue of practical difficulties and unnecessary hardship. The authorities declare to the contrary.

Thus, in 58 Am.Jur., "Zoning" p. 1053, Sec. 207, it is stated:

"In determining whether to grant a variation of the application of a zoning restriction to a particular piece of property, it is proper to take into consideration the availability or suitability of the property for a conforming use, and the imposition by such use of financial loss on the owner of the property by depreciation in value or income. Indeed, there are several decisions to the effect that a case of unnecessary hardship may be established by showing that the premises in question cannot be made to yield a reasonable return if used only for a conforming use, or that the premises are not adapted to a profitable conforming use."

In 168 A.L.R. 13, it is stated, at page 32:

"It has been recognized, however, that financial or pecuniary loss or dis-

advantage is a factor or an element to be taken into consideration in the determination of the question.

"And there are several decisions to the effect that a case of unnecessary hardship may be established by showing that the premises in question cannot be made to yield a reasonable return if used only for a conforming purpose."

Yokley Zoning Law and Practice, 2d Ed., Vol. 1, Sec. 138, p. 336, states:

"A Zoning Board of Appeals may grant a variance upon the ground of 'unreasonable hardship' if the land cannot yield a reasonable return if used only for a purpose allowed in that zone and the plight of the owner is due to unique circumstances and not to general conditions in the neighborhood which may reflect the unreasonableness of the zoning ordinance itself and the use to be authorized will not alter the essential character of the locality."

We do not have here a case, such as those cited by appellant, where the applicant for variance is trying to obtain a change from one zoning classification to another. One of those cases, which is cited several times in appellant's brief, is State ex rel. Nigro v. Kansas City, 325 Mo. 95, 27 S.W.2d 1030. There Nigro sought to put up a building in a district that was zoned for residential purposes only. As the court said, he was asking the Board "to rezone the corner upon which his property is located." Here respondent and his principals are simply seeking *to use the property for the very purpose* (high apartments) *for which it is already zoned.* Nor is this a case like those cited by appellant where the applicant is able to make a fair economic use of his property within the scope of the existing zoning restrictions, but tries to use his property for a different purpose so that he can make still more money. In the instant case the Phillips family has held this property

for a quarter of a century without having been able to make any economic use of it whatsoever. All that is being sought here is that some economic use be permitted.

Appellant contends that the Board granted "wholesale" variances "in a dozen different ways." The fact is, as a study of the exhibits will show, many of the things referred to by appellant are not "variances." The proposed structure will comply with the zoning requirements as to setbacks and the amount of off-street parking. Without discussing them in detail, it is our view that the few variances granted by the Board are reasonable and consistent with the "general purpose and intent" of the zoning regulations.

The judgment should be affirmed. It is so ordered. All concur.