Alfred R. CONNER and Marie D. Conner, his wife, Plaintiffs-Appellants,

v.

James HERD, Robert Burns and Carl Breihan, as Members of the St. Louis County Board of Zoning Adjustment; Donald E. Mueller, as Public Works Director and Zoning Enforcement Officer of St. Louis County; Moline Fire Protection District, a Corporation; and Victor Wolfsberger, Donald Weber and Roy Gastorf, as Members of the Board of Directors of said Moline Fire Protection District, Defendants-Respondents.

No. 33630.

St. Louis Court of Appeals, Missouri.

Feb. 24, 1970.

Harold S. Cook, D. Jeff. Lance, St. Louis, for plaintiffs-appellants.

T. Douglas Moore, Clayton, Legal Counsel for Moline Fire Protection Dist. and its Board of Directors, Joseph B. Moore, St. Louis County Counselor, Thomas W. Wehrle, Deputy County Counselor, Harvey J. Schramm, Asst. County Counselor, Clayton,, Legal Counsel for James Herd, Robert Burns and Carl Breihan, as Members of St. Louis County Board of Zoning Adjustment and Donald E. Mueller, as Public Works Director and Zoning Enforcement Officer of St. Louis County, for defendants-respondents.

SMITH, Commissioner.

This is an appeal from a certiorari proceeding instituted in the Circuit Court to test an order of the Board of Zoning Adjustment of St. Louis County (hereinafter Board) granting Moline Fire Protection District of St. Louis County (hereinafter Moline) building and occupancy permits for the erection of a new fire house at Chambers Road and Clairmont Drive in St. Louis County. Action of the Board was necessary because the proposed new fire house would encroach 18 feet on the established set-back line on Chambers Road and 2 feet on the established building line of Clairmont Drive. The Circuit Court affirmed the action of the Board in granting variances from the provisions of the County ordinances establishing the set-back and building lines. Appellants are a husband and wife who own the property adjoining that of Moline facing Chambers Road and to the west of the site in controversy. Respondents are the members of the Board, the Public Works Director and Zoning Enforcement Officer of the County, Moline, and the members of the Board of Directors of Moline.

The genesis of the litigation was the filing by Moline in April, 1963, of an application to the Board for variances from the set-back and building line provisions. Due to failures to follow the ordinance procedures as to notice, the order of the Board granting the relief prayed in the April application is conceded to be a nullity. Its issuance, however, led to the beginning of construction of the fire station by Moline. This suit then ensued, and shortly after its inception, a new application was made to the Board, which held a hearing thereon. Following this hearing the Board on October 28, 1963, issued the order under attack here, again granting the variances sought by Moline. By supplemental petition, in two counts, appellants sought review by certiorari of the October order of the Board. Count I attacked the order upon the grounds that it was beyond the jurisdiction of the Board and that the findings of the Board granting relief were unsupported by the evidence. Count II sought an injunction restraining Moline from erection of the fire station in violation of the set-back and building restrictions. Following answers and replies, the writ of certiorari issued to the Board, and in November, 1966, the court, entered its findings of fact, conclusions of law and judgment affirming the decision of the Board. Thereafter, Count II was dismissed by the court on motion of respondents. Appeal was taken to this court which transferred the cause to the Supreme Court on the basis that a political subdivision of the state, Moline, was a party. Mo.App., 429 S.W.2d 333. The matter was retransferred here by the Supreme Court upon a determination that Moline was not a subdivision of the state for purposes of jurisdiction under Art. V, Sec. 3, Constitution of Missouri, V.A.M.S. Mo., 442 S.W.2d 501. Jurisdiction of the appeal having been decided, we now reach the merits.

The matter was tried in the Circuit Court on documentary evidence including the transcript of the hearing before the Board. By stipulation, the codified or-

dinances of the County were presented to this court as an exhibit which were a part of the records of the Board, although not formally introduced before the Board. We limit our review to the record before us, including the ordinances, and disregard the non-record factual assertions pressed on us by both sides.

Appellants contend that the trial court was in error in its conclusions of law in three particulars, each decided contrary to appellants' position. The first contention is that the order of the Board was unlawful because not incorporated in the minutes of the Board as required by Section 1004.050, St. Louis County Revised Ordinances. Secondly, appellants contend that the Board lacked the power to vary the set-back and building lines as such power is legislative, not administrative. Thirdly, appellants contend the findings of the Board were arbitrary and capricious and not based upon competent and substantial evidence. We take these in order.

Section 1004.050, St. Louis County Revised Ordinances (SLCRO) provides:

> "ACTION BY ORDER.—All action or decisions of the Board [of Adjustment] shall be taken by order, in which two members must concur. Each order shall contain a statement of the grounds and any findings forming the basis of such action or decision, and the full text of the order and record of members' votes shall be incorporated in the minutes of said Board."

The order of the Board was signed by the chairman and attested to by the secretary, who is not a member of the Board. The order is dated October 28, 1963, three days after the hearing of the application. No reference to the order or decision of the Board is contained in the minutes of the Board's meetings after October 28, 1963.

At the conclusion of the hearing on October 25, 1963, some discussion ensued between the Board and counsel as to the need for a speedy decision on the application since construction had been stopped and the old fire house (part of which had been demolished) was open to the elements. Appellants' attorney was agreeable to continuation of the matter until the next meeting of the Board, two weeks later. Moline's attorney pressed for an immediate decision. The following colloquy then ensued:

> "Mr. Cook [appellants' attorney]: Well, Mr. Chairman, I don't want to keep you from deciding it if you want to decide it today, but I am telling you now that the Fire Protection District, regardless of what you decide, is probably not going to be able to go ahead anyway.

> "Mr. Moore [Moline's attorney]: Why doesn't the Commission take this matter under advisement until Monday?

> "Chairman Herd: All right, we can * * * we don't have to continue the matter, we can decide it and inform the parties of what our decision is, and decide it formally, or enter our order at the next session. We will consider this matter and advise both counsel exactly what our decision is.

> "Mr. Cook: All right, that will be fine."

The minutes of the Board of October 25, contain the entry: "It was decided that the Board would take this matter under advisement and inform the parties concerned of their decision in a few days."

There is no contention that appellants were not immediately informed of the Board decision or that they did not receive a copy of the order of the Board promptly after the decision. There is no evidence that the order of the Board, although signed only by the president, was the decision of less than a majority of the Board. In the absence of evidence to the contrary there exists a presumption that public officials in the exercise of their public duties act correctly and properly.

Scales v. Butler, Mo.App., 323 S.W.2d 25 [7–9]. That presumption applies here to the signing and attesting of the order of the Board that such order is in fact the action of the Board prescribed by the ordinance. The ordinance does not require that the order be signed by two members.

The failure of the Board to include the order in its minutes or to have the minutes reflect the vote of the members is not fatal. The chapter of SLCRO establishing the Board and providing for its operation does not provide what result shall flow from a failure to include the decision in the minutes nor does it specifically provide that the word "shall" means "mandatory" rather than "directory" as the chapter immediately preceding it does. In such posture the rule stated in State ex inf. McAllister ex rel. Lincoln v. Bird, 295 Mo. 344, 244 S.W. 938 [3] applies. It was there stated:

"Under a more general rule, this construction may be sustained, in that, if a statute merely requires certain things to be done and nowhere prescribes the result that shall follow if such things are not done, then the statute should be held to be directory. The rule thus stated is in harmony with that other well-recognized canon that statutes directing the mode of proceedings by public officers are to be held to be directory and are not to be regarded as essential to the validity of a proceeding unless it be so declared by the law. * * *"

No such declaration here exists. Appellants received notice of the action of the Board and they agreed that the Board could take such action other than at a regular meeting. They have demonstrated no prejudice as a result of the failure to include the order in the minutes, and the order is a part of the records of the Board available to the public. Appellants are in no position to complain of the failure to incorporate the order in the minutes of the Board.

The contention that the action of the Board was legislative and therefore beyond its power is also without merit. It is true that a Board of Adjustment is solely an administrative body "without a vestige of legislative power." Brown v. Beuc, Mo.App., 384 S.W.2d 845. It may not change the boundaries of zoning districts nor the regulations of the zoning code. It is empowered however to give variances, which are in the nature of waivers of the strict letter of the zoning law upon substantial compliance with it and without sacrificing its spirit and purpose. It is required to balance the difficulties and hardships that may be encountered in applying the regulations to a particular property against other considerations in determining whether a variance should be granted. Rosedale-Skinker Imp. Ass'n v. Board of Adjustment, Mo.Sup. en banc, 425 S.W.2d 929 [10–14]. In such capacity the Board is engaged in the enforcement rather than the enactment of a zoning regulation. See State ex rel. Ludlow v. Guffey, Mo., 306 S.W.2d 552; Carlyle-Lowell, Inc. v. Ennis, Mo.App., 330 S.W.2d 164; State ex rel. Union Electric v. City of University City, Mo.App., 449 S.W.2d 894 (filed by this Court January 20, 1970). The authority of the Board here is found in SLCRO 1004.070 which reads:

"JURISDICTION AND POWERS.— The Board of Zoning Adjustment is hereby authorized to: (5) Permit a variation in the yard requirements of any Zoning District or the building and set back lines for Major Highways as provided by law where there are practical difficulties or unnecessary hardships in the carrying out of these provisions due to an irregular shape of the lot, topographical or other conditions, provided such variation will not seriously affect any adjoining property or the general welfare."

This provision, under which the Board acted here, empowers the Board to

give variances under specified circumstances where strict enforcement of the regulations would be unjust. It imposes standards for the Board's action and is not a grant of legislative power. State ex rel. Ludlow v. Guffey, *supra*.

██ This brings us to the heart of this appeal, appellants' contention that the action of the Board was not based on competent and substantial evidence and was arbitrary and capricious. Neither this court nor the trial court can substitute its judgment on the evidence for that of the Board. We may only determine whether the Board could reach the conclusion it did upon the evidence before it. We hold it could.

As has been alluded to before, the power of a board of adjustment to grant variances must be limited by some standards for making the decision. Otherwise, it does constitute an unlawful grant of legislative power. See State ex rel. Ludlow v. Guffey, *supra*. We reject respondents' contention that the power exercised here was under subsection (6) of 1004.070 which allows variations where strict application of the zoning code relating to use, construction, or alteration of buildings or structures or the use of land will impose upon the landowner practical difficulties or particular hardship. No question has been raised that the land may be used for the purpose desired by Moline. The question here is not use, construction or alteration of buildings, as contemplated by subsection (6), but adherence to set-back and building lines, specifically referred to in subsection (5) (above set out). If variance from set-back and building lines is covered by subsection (6) which carries a broader discretion than subsection (5) there is no need for (5) at all. The order of the Board, although not specifically referring to (5), was framed in language which clearly indicated that the Board was making its findings on the basis of the standards in subsection (5).

Subsection (5) requires four factual determinations in order that a variance be granted. They are (1) that practical difficulties or unnecessary hardships exist in carrying out the building line or set-back regulations, (2) that these difficulties or hardships are due to irregular shape of the lot, topographical or other conditions, (3) that the variance will not seriously affect any adjoining property and (4) will not seriously affect the general welfare.

██ Rosedale-Skinker Imp. Ass'n v. Board of Adjustment, *supra*, establishes that the terms "practical difficulties or unnecessary hardships" are not limited to physical impossibility of use but include economic hardship, disruption of service by a utility, and inconvenience to its subscribers. That case did not involve the further restriction found in this ordinance relating to topography, but we hold that if a hardship or practical difficulty of the nature described in *Rosedale-Skinker* is found which exists because of the irregular shape, topography, or other conditions of the lot the requirements of (1) and (2) are met.

██ In State ex rel. Rabenau v. Beckemeier, Mo.App., 436 S.W.2d 52, we held in interpreting the same ordinance that the term "other condition" means some physical characteristic peculiar to the lot which gives rise to the difficulty or hardship. In determining whether such physical characteristic or "other condition" exists the Board must necessarily take into account the uses allowed by the zoning ordinances, for if the size, or length, or depth of a lot from a practical standpoint precluded any allowed use without a variance the refusal to grant a variance would in effect prevent any use of the land at all. See Carlyl-Lowell, Inc. v. Ennis, *supra*. A comparable situation is present here in that the usage which Moline may make of the land is considerably more restricted than that of the private landowner. Moline is a political subdivision of the state by statutory enactment (except for purposes of appellate jurisdiction) (Section 321.100) created to provide fire protection for the

district. In such capacity the use to which it may put its property is virtually limited to the erection of a fire house. This also may properly be considered by the Board.

Having in mind the limited scope of our review of the findings of the Board we turn to the evidence which supports the Board's order. The property in question is on the northwest corner of Chambers Road and Clairmont Drive in an unincorporated portion of St. Louis County. Chambers Road is a major thoroughfare which was widened shortly before the application for variance. The land in question is owned by Moline and has been the site for its fire station since at least 1946. The old fire house complied with the Chambers Road set-back line but not with the Clairmont Drive building line upon which it encroached approximately 4½ feet as a pre-existing use.

The old fire house had two entrances into Clairmont Drive and none into Chambers Road. On seventy-five percent of the calls to the department the fire truck was required to enter Clairmont Drive and then turn into Chambers Road, a dangerous procedure. Moline's board of directors determined that a new fire house was needed to adequately serve the district. For the purpose of the erection of such a station a bond issue of $150,000 was submitted to and approved by the voters of the district. In order to maintain the insurance rating of the Moline district it was necessary that the fire house be located within 500 feet of the Chambers-Clairmont location. No other satisfactory site could be obtained within this area, without an expenditure which would make the bond issue funds inadequate. It was decided to use the land in question which was already owned by Moline. It was also necessary, in order that fire protection to the district not be interrupted during construction, that all but the front 15 feet of the old fire station be left standing during construction of the new station. To build the new station, while leaving the old one standing required that the front of the new station be 18 feet

closer to the centerline of Chambers Road than the set-back line.

The most efficient and satisfactory type of fire station for Moline's purposes is one where returning trucks can enter the back of the station from Clairmont Drive, remove the hoses and other equipment for cleaning, put clean equipment on the truck and move the truck into position for exit through the front onto Chambers Road for the next call. The lot in question is 165 feet in depth (after the widening of Chambers to 80 feet) and 80 feet in width. If the set-back line on Chambers Road, 80 feet, is adhered to there would not be enough room at the rear of the station (39 feet) for the large fire trucks to negotiate the turn from Clairmont Drive into the rear of the station. The entrance from Clairmont would also obviate the need for the trucks to back into the station from Chambers Road. There was also testimony that having the station located nearer the road than the old station would allow greater traffic safety in leaving the station in that both the dispatcher and the driver would have greater visibility along Chambers. This was based upon a difference in elevation of the property from front to rear of 6 feet, the front being higher. In view of testimony that regardless of where the station is located the trucks would have to slow down before entering Chambers Road to be sure the traffic was clear, we doubt that this evidence alone would be enough to establish a hardship based upon topographical conditions.

The width of the lot is such that a 2 foot variance on the building line of Clairmont Drive would be necessary to get the proposed fire station on the property if the regulation of a 6 foot side yard on the west (next to appellants) is met. The granted variance is less than the previously existing encroachment.

■ We hold that on the evidence before it the Board could conclude that the size of the lot here prevents its use by Moline for the erection of an adequate fire

house, the only use Moline could make of it, unless the variances sought were granted. What constitutes an adequate and efficient fire house is essentially a determination for Moline. The Board cannot be found in error in accepting the evidence of Moline in this regard, and in rejecting the contentions of appellants that other designs (such as side entrance) are possible. The inadequate size of the lot in question, without a variance, to contain an adequate and efficient fire house, the only use to which Moline may put the property, is sufficient to sustain the Board's finding on requirement 2 of the ordinance.

The Board could find here that in the absence of a variance Moline would be confronted with substantial additional expense, interruption of fire protection service during the period of construction, and unnecessary inconvenience if not outright danger to the residents of the district. The Board is not required to ignore the source of the funds available to the district (taxpayers) in determining that additional expense constitutes an unnecessary hardship. Under *Rosedale-Skinker, supra,* there exist sufficient "practical difficulties" and "unnecessary hardships" to the district to permit a variance and these arise from the inadequate size of the lot to contain a fire station. This was the essence of the Board's finding "that because of the requirements, the proposed new building and facilities cannot be erected as the eighty foot set back line on Chambers Road and the thirty foot building line on Clairmont Drive are intended."

Appellants contend that there is no evidence to support a conclusion that the variance will not "seriously affect any adjoining property." We do not agree. This contention must be judged only upon the effect of a variance, not upon the effect of a fire house. Appellants' contention is based solely upon the effect upon their property. The fire house to be constructed will be for the front 9 feet, one story in height. The remainder will be two stories. Some air conditioning

equipment will be located on the roof of the one story section but the record does not require a conclusion that this will create an undue amount of noise or other disturbance affecting appellants' property, nor that any effect will be the result of the variance. Such equipment would actually be closer to appellants' home if the variance were not granted than if it were. It is also true that the proposed fire house will be 6 feet from appellants' property line and 13 feet from the edge of appellants' home. This, however, is not caused by the variance requested, for Moline could place the building that close without a variance. Appellants contend that the granting of the variance will reduce their view to the east. Appellant husband testified that he had paid $26,500 for his land and house and that "he felt" the proposed new fire house would damage him at least one-third to one-half the value of his property. He offered nothing to support this opinion, and could not state the fair market value of his home before or after the variance. Although such opinion evidence may be competent, its weight is for the trier of fact. Neither the Board, nor the trial court, nor this court is bound to accept such testimony as establishing the effect on appellants' property. Veal v. Leimkuehler, Mo.App., 249 S.W.2d 491 [9–12]. The Board had before it pictures of the area involved, taken from several different angles. It could determine from those pictures the degree to which appellants' view is reduced. It could take into account the improvement of traffic safety on Chambers Road, which would inure to appellants' benefit, which had been testified to. We do not doubt that there is some effect on appellants' property. That it is seriously affected we cannot hold as a matter of law on the record before us. Based upon the testimony and evidence before it, we cannot say there was no competent and substantial evidence to support the Board's finding in this regard.

The effect on general welfare finding is supported by the evidence of the need for the new building to render adequate fire protection to the district and by the

**280**

testimony on the beneficial effect of the proposed construction upon traffic safety on Chambers Road, including the installation of a traffic light on Chambers Road to be controlled by the dispatcher when trucks leave the station.

We find that there was substantial evidence before the Board upon which it could properly base a finding of each of the requirements of the ordinance. The judgment is affirmed.

PER CURIAM.

The foregoing opinion by SMITH, C., is adopted as the opinion of this court. Accordingly, the judgment is affirmed.

WOLFE, P. J., and BRADY and DOWD, JJ., concur.