**Richard T. OGAWA, Plaintiff–Appellant,**

v.

**CITY OF DES PERES, Mo., et al.,
Defendants–Respondents.**

No. 52605.

Missouri Court of Appeals,
Eastern District,
Division Four.

Dec. 29, 1987.

Motion for Rehearing and/or Transfer
Denied Jan. 26, 1988.

Application to Transfer Denied
March 15, 1988.

Steven Walter Garrett, Clayton, for plaintiff-appellant.

James W. Erwin, St. Louis, for defendants-respondents.

SIMON, Presiding Judge.

Richard T. Ogawa (hereinafter "appellant") filed petitions for certiorari and mandamus in the St. Louis County Circuit Court seeking review of a decision by the Board of Adjustment of the City of Des Peres, Missouri (Charles Hobbs, Chairman, and board members, Michael Searles, Charles Wetzel, John Tomasovic, and John M. Olson, hereinafter "the Board") denying appellant's request for certain zoning variances. The circuit court found in favor of the Board and appellant appeals.

On appeal, appellant contends that the trial court erred in denying the petitions for certiorari and mandamus because: (1) the Board's denial of one variance was unreasonable, arbitrary, and capricious, amounting to an unlawful taking of appellant's property; (2) the Board's denial of two of the four requested variances was illegal, arbitrary, and capricious, creating an inconsistency; (3) appellant established a nonconforming use of the property as a dental office; and, (4) the Board improperly heard, considered, and relied upon evidence and speculation of both residents and board members concerning the effect that granting variances to appellant would have on future potential owners of the property and the use they might put on said property. We affirm.

Appellant, a licensed dentist practicing in the City of Des Peres, St. Louis County, Missouri, sought to relocate his office. In March, 1984, he became interested in property located at 1090 Kinstern, City of Des Peres. Before purchasing the property, appellant's real estate agent sent a letter to the Des Peres Director of the Public Works inquiring as to whether the property could be used for a dental office. The director responded informing appellant and his agent that the above numbered property was zoned "C-1 commercial" and as such, allowed "offices for the pursuit of any lawful business or profession." Additionally, the director informed them that while a dental office appeared to be an appropriate use within the meaning of the ordinance, a site plan would have to be approved by the Des Peres Planning and Zoning Commission (hereinafter "the Commission") and variances might have to be requested from the Board. Shortly thereafter, on May 8, 1984, appellant purchased the property.

On July 11, 1984, and again on August 8, 1984, appellant appeared, without counsel, before the Commission to obtain approval for his site plan. The Commission denied the site plan. The denial was allegedly based on an erroneous belief that an ordi-

nance required commercial property to have a 150 foot frontage requirement on Manchester Road. At the time, however, no such ordinance existed. Judicial review of this decision was not sought. Approximately one month after the site plan was denied, the Board passed an ordinance amending the C–1 ordinance requiring all C–1 commercial property to have a minimum of 150 feet of frontage on Manchester Road. The new ordinance became effective September 10, 1984.

The pertinent Des Peres zoning ordinances provide as follows:

Section 405.090: *Permitted Uses in Commercial "C–1" Districts*

A. Property located in this district may be used for the permitted uses hereinafter set forth only if said property fronts directly on Manchester Road and then only if said frontage is a minimum length of 150 feet. Subject to the foregoing, the following uses are permitted in the district:

1. Any use permitted in the residential "A" district other than a dwelling.

2. Financial institutions (other than banks) and financial offices.

3. Barber shops and beauty shops.

4. Electronics repair and servicing.

5. Clothes pressing, tailor shops, laundry and dry cleaners.

6. Offices for the pursuit of any lawful business or profession.

7. Insurance and real estate agencies.

8. Retail stores.

9. Repair or servicing of small household or personal items.

10. Planned business centers.

11. Accessory uses to the above.

The residential uses alluded to in Des Peres Zoning Ordinance § 405.090(A)(1) are listed in Des Peres Zoning Ordinance § 405.020:

*Residential "A" District*

A. Only the following uses are permitted in this district:

1. Single Family dwelling.

2. House of worship.

3. Public school or private school with curriculum similar to that of a public school.

4. Home occupations.

5. Municipally owned or operated facilities upon approval by the Board of Aldermen after a hearing notice and held in a manner the same as a zoning change.

6. Accessory buildings.

We note that the record contains the foregoing ordinances and several other ordinances, but not the entire Des Peres Zoning Code.

On June 20, 1985, appellant appeared, without counsel, before the Board of Adjustment to obtain approval for certain variances. The variances requested included:

1. Front yard set back of 44.77 feet from the center line of Kinstern and 45.00 feet from the center line of Academy in lieu of the required 60 feet front yard set back 405.090(d) Des Peres Zoning Ordinances.

2. Lot width of 125 feet on Kinstern in lieu of the required 150 feet on Manchester Road. § 405.090(a) Des Peres Zoning Ordinances.

3. Buffer at the rear yard of 5 feet in lieu of the required 25 feet. § 405.090(i) Des Peres Zoning Ordinances.

4. Parking set back of 28 feet from the center line of Kinstern Drive in lieu of the required 40 feet. § 405.180(e)(3) Des Peres Zoning Ordinances.

The Board denied the request for variances and judicial review was not sought. Subsequently, appellant rented the property as a dwelling.

Thereafter, appellant obtained counsel and requested a second hearing before the Board. The Board granted a second hearing on March 25, 1986. Appellant's counsel presented additional arguments in requesting the same four variances previously denied. The Board granted variances (1) and (3), and denied (2) and (4). The denial of these two variances forms the basis of this appeal.

The Board did not make written findings of fact and conclusions of law, and

is not so required. Chapter 89 RSMo (1986); *Mullen v. City of Kansas City*, 557 S.W.2d 652, 654 (Mo.App.1977). However, § 89.080 RSMo (1986) provides, in pertinent part:

> The board shall keep minutes of its proceedings, showing the vote of each member upon question, or, if absent or failing to vote, indicating such fact, and shall keep records of its examinations and other official actions, all of which shall be immediately filed in the office of the board and shall be a public record. All testimony, objections thereto and rulings thereon, shall be taken down by a reporter employed by the board for that purpose.

(Asterick omitted). Here, the record contains the transcript of the Board's proceedings.

Whether application of a zoning ordinance to a particular tract is reasonable and constitutional, or arbitrary and unconstitutional, depends upon the facts, circumstances, and the evidence in each case. *Loomstein v. St. Louis County*, 609 S.W.2d 443, 446 (Mo.App.1980). The burden of proving unreasonableness is on the person challenging the ordinance. *Lafayette Park Baptist Church v. Scott*, 553 S.W.2d 856, 861 (Mo.App.1977). Property may not be zoned so as to prevent any effective use, because such a regulation becomes an unlawful confiscation. *Id.* at 862.

In zoning variance cases, we must determine the type of variance involved, i.e., use or nonuse. The type of variance will determine what facts the applicant for the variance must establish. *See: Matthew v. Smith*, 707 S.W.2d 411 (Mo. banc 1986). A use variance is one permitting a use other than one proscribed by the zoning ordinance in the particular district; it permits a use which the ordinance prohibits. A nonuse variance authorizes deviations from restrictions which relate to a permitted use, rather than limitations on the use itself. *Matthew v. Smith*, 707 S.W.2d at 413 (quoting from, 3 A. Rathkopf, *The Law of Zoning and Planning* § 38.01 (1979)). Since appellant's property is in an area zoned C–1 commercial, the variance from the 150 foot frontage requirement and the parking set back variance are not use variances, but are nonuse variances.

We limit our review of a decision by the Board of Adjustment to a determination of whether the ruling is authorized by law and supported by competent and substantial evidence upon the whole record. *Volkman v. City of Kirkwood*, 624 S.W.2d 58, 59 (Mo.App.1981). Additionally, in determining whether substantial evidence exists to support the decision of the Board, we view the evidence, and its reasonable inferences, in a light most favorable to the Board's findings. *Id.* at 58–59.

The Board's authority to grant a variance is statutorily based upon a showing of "practical difficulty or unnecessary hardship." *See:* § 89.090.1(3) RSMo (1986) and Des Peres Zoning Ordinance § 435.040(3). This power and authority must be exercised sparingly and only under exceptional circumstances. *Matthew v. Smith*, 707 S.W.2d at 413. Such application is essential in order to maintain the integrity of the zoning code.

To obtain a nonuse variance, appellant must establish, inter alia, practical difficulties, which are the existence of conditions *slightly* less rigorous than unnecessary hardships. *Matthew v. Smith*, 707 S.W.2d at 416 (Emphasis theirs). Our Supreme Court in *Matthew* permitted use variances under the proper circumstances for the first time in Missouri. *Id.* at 414. Although the majority opinion cites several Missouri cases which state that a use variance is not allowable, *Id.* at 414 n. 2, the opinion expressly permits nonuse variance analysis to be derived from those cases. *Id.* at 416 n. 6. In determining whether such practical difficulties exist in nonuse variance cases, the following guidelines have been established:

> The phrase "practical difficulties or undue hardships" as contained in the Zoning Code does not refer to conditions personal to the owner of the land in question but rather refers to the conditions especially affecting the lot in question. Further, the practical difficulty or

undue hardship relied on as a ground for a variance must be unusual or peculiar to the property involved and must be different from that suffered throughout the zone or neighborhood.

*Brown v. Beuc,* 384 S.W.2d 845, 852–53 (Mo.App.1964).

In point one appellant contends that the Board's denial of his request for a variance from the 150 foot frontage requirement on Manchester Road was unreasonable, arbitrary, and capricious, amounting to an unlawful confiscation of his property. In support of his first contention, appellant alleges: (1) that certain hardships and difficulties arise wherein 1090 Kinstern will never comply with the present Manchester Road requirements of the C–1 commercial district ordinance in the Des Peres Zoning Code which consequently deprive appellant of any commercial use of his property; and, (2) that said hardships and difficulties are unique.

As to the first allegation, we note that as a result of the 150 foot Manchester Road frontage requirement, appellant cannot use his property for a permitted use proscribed in the C–1 zoning ordinance. In its brief, however, the Board concedes that appellant's use of his property as a rented dwelling constitutes a nonconforming use.

■ The exact date of the enactment of the initial C–1 ordinance and the date of the construction of the dwelling are not in the record. Appellant contends that the dwelling was constructed after the enactment of the initial C–1 ordinance. However, there is evidence in the record, and the Board concludes in its brief, that the dwelling was built as a residence prior to the enactment of the initial C–1 ordinance. The term "nonconforming use" means a use of land which lawfully existed prior to the enactment of a zoning ordinance and which is maintained after the effective date of the ordinance even though not in compliance with use restrictions. *Missouri Rock, Inc. v. Winholtz,* 614 S.W.2d 734, 739 (Mo. App.1981). On review of the findings of the Board, we may not substitute our discretion for that of the Board, even in a case where different fact findings are permissible. *In re Botz,* 236 Mo.App. 566, 159 S.W.2d 367, 373 (1942). The Board's con-

clusion in its brief that appellant maintains a nonconforming use in the property is supported by the record. The use of appellant's property as a rented dwelling is a nonconforming use which is the continuance of a vested property right that the City of Des Peres and the Board may not abrogate. *State ex rel. Capps v. Bruns,* 353 S.W.2d 829, 830 (Mo.App.1962); *Missouri Rock, Inc., supra.*

■ Appellant relies on several cases to support his allegation that the denial of the 150 foot frontage variance was unreasonable. In *Conner v. Herd,* 452 S.W.2d 272 (Mo.App.1970), we upheld a variance granted by the board to permit the erection of a firehouse. We held that the board correctly granted certain variances which would, if denied, deprive the plaintiffs of the only use which they could make of the property. Additional evidence in support of the board's decision established that the absence of such a variance would result in substantial expense and delay creating a potentially dangerous situation by interrupting fire protection. Appellant also relies on *Carlyle Lowell Inc. v. Ennis,* 330 S.W.2d 164 (Mo.App.1959). In *Carlyle,* the family seeking the variance had held the property for a quarter of a century without being able to make any use of the property whatsoever.

In both cases the courts upheld variances granted by the boards, where denying such variances would have amounted to a denial of any use under the existing zoning ordinances. The boards in both instances found the properties unique by focusing on the topography and character of the land in question. *See: Carlyle,* 330 S.W.2d at 169; and, *Conner,* 452 S.W.2d at 278. Additionally, the boards found that allowing the variances would not have an adverse impact on the surrounding land. Moreover, they found that the variances would not change the nature of, or effect the general welfare of, the surrounding neighborhood. *See: Carlyle,* 330 S.W.2d at 169; and, *Conner,* 452 S.W.2d at 279. Thus, the boards properly considered those factors necessary to support the granting of a variance. *Conner,* 452 S.W.2d at 277.

In *Carlyle* and *Conner,* denying the variances would have been the equivalent of

denying the landowners any use of their land. In the instant case, although appellant is, as in *Carlyle* and *Conner*, deprived of any "permitted use" under the present zoning ordinance, such deprivation is not the equivalent of denying appellant any use of his property. Appellant may continue to use his property pursuant to the nonconforming use. Additionally, there is no evidence that appellant's property itself is unique. The record indicates there are at least fifteen other parcels of property similarly situated. Also, the record indicates that granting the variance would alter the character of the neighborhood. Thus, we conclude that appellant has a reasonable use for the property and the Board's denial is not unreasonable, arbitrary, or capricious.

Next we address appellant's second allegation in support of his first point. This allegation emphasizes the "uniqueness" of the hardships and practical difficulties. This uniqueness apparently arises from several incidents. First, appellant purchased the property and began seeking approval from the city before the enactment of the 150 foot frontage requirement on Manchester Road. Second, the Commission's denial of appellant's site plan was allegedly based on an erroneous assumption that a 150 foot Manchester Road frontage requirement existed.

Since appellant did not appeal the Commission's decision on his site plan, any hardships arising from the denial of the site plan by the Commission are not the subject of this review. Additionally, although appellant purchased his property before the passage of the 150 foot frontage ordinance, he was informed that he would have to obtain approval of his site plan and that certain variances may have to be requested.

Nevertheless, the Board gave some consideration to these incidents as requested by appellant when deciding whether to grant the variances in the second hearing. The evidence establishes several reasons for denying the variance. It indicates that granting the 150 foot frontage variance would cause additional traffic problems on an already congested street. Moreover, the evidence indicates that appellant's property is not unique. One board member expressed fears that granting such a variance would create a precedent for the other properties similarly situated, and eventually amount to a total abrogation of the zoning requirement.

Hardships are not personal to the owner of the land, but rather refer to the conditions especially affecting the property in question. *Brown v. Beuc*, 384 S.W.2d at 852. While appellant relies on personal hardship to support his contention, the Board properly considered the impact on the land and surrounding properties. Thus, we find the Board's denial of the 150 foot frontage requirement authorized by law and supported by substantial and competent evidence upon the whole record and not unreasonable, arbitrary, or capricious. Point one denied.

In his second point, appellant asserts that denying two variances was inconsistent with granting two others, thereby rendering the denials unreasonable, arbitrary, and capricious. Appellant argues that the granting of one variance and the denial of another is fatally inconsistent because the standards for granting both variances are the same. Appellant cites no authority for this statement. Section 89.090.2 RSMo (1986), however, specifically grants the Board the power to "reverse or affirm, wholly or partly ... as ought to be made." Moreover, enforcing such a general statement would invariably impose detrimental results on landowners seeking more than one variance. Such a proposition suggests that if the Board denies one variance, it must deny them all.

Upon review of the record in the instant case, we find that the Board considered each variance with respect to its probable impact on the property involved as well as surrounding properties. In considering whether to grant the variances, the Board established that granting the front yard and back yard setback variances would not create any problems or nuisances. Granting the 150 foot frontage variance, however, would amount to a total abrogation of the zoning ordinance and consequently would pose a threat to the City's zoning scheme.

In determining whether to grant a variance, the Board must consider those factors affecting "the spirit of the ordinance." *See:* § 89.090.1(3) RSMo (1986). Additionally, the Board may not grant a variance if it would require a sacrifice of the purpose of the zoning law. *Conner,* 452 S.W.2d at 276. We conclude that the Board properly considered the impact of the separate variances on the overall zoning scheme. Thus, appellant's second point is without merit.

■ In his third point, appellant argues that the trial court erred in denying his petitions because he had established a nonconforming use as a dental office. All nonconforming uses are exempt from the immediate operations of a zoning ordinance. *City of Monett v. Buchanan,* 411 S.W.2d 108, 115 (Mo.1967). Pursuant to this rule, appellant argues that since he began the process of obtaining approval for the use of his property as a dental office prior to the passage of the amendment to the zoning ordinance, he is exempted from complying with the 150 foot frontage requirement. Appellant admits that the property was never used as a dental office prior to the passage of the amendment. Nevertheless, appellant suggests that the act of seeking approval for such a use constitutes a "nonconforming use" within the meaning of the rule stated in *City of Monett.*

In *Pearce v. Lorson,* 393 S.W.2d 851 (Mo.App.1965), we addressed a similar situation. In *Pearce,* a chiropodist had purchased a house and received a permit to use the property as a doctor's office. Subsequently, the city rezoned the area specifically prohibiting the use of the property as a doctor's office. Consequently, the Board of Adjustment revoked his permit. We held that the purchase of a house and the acquisition of a permit did not constitute an established nonconforming use. *Id.* at 854. Similarly, we find that appellant's purchase of the property and his preliminary steps seeking approval did not establish a nonconforming use. Point three denied.

Appellant contends in his final point that the Board improperly heard, considered, and relied upon evidence and speculation of residents and board members concerning the future use of the property.

■ Appellant's reasoning rests solely on the assertion that the ordinances granting power to the Board do not expressly authorize the Board to consider such evidence. *See:* § 435.040(3) Des Peres Ordinance; and, § 89.090.1(3) RSMo (1986). Although not expressly authorized, it is nevertheless proper and necessary for the Board to hear such evidence. The Board has an affirmative duty to uphold the spirit of the zoning ordinances as well as assure that variances granted will not disrupt or endanger public welfare. Where the resulting variance may affect neighboring property, consideration of the future use of such property is relevant. Variances run with the land and are not personal to the owner. 3 A. Rathkopf, *The Law of Zoning and Planning* § 38.06 (1979).

Additionally, appellant asserts that the application of the standard, "practical difficulties or unnecessary hardships," must be limited to the immediate applicant. The application of the standard, however, is to the contrary. Hardships pertain to the nature of the property rather than the character of the owner. Hagman and Juergensmeyer, *Urban Planning and Land Development Control Law 2d* 176–177 (1986). Thus, when granting a variance the Board must consider the present and future effect of such variances on that property and neighboring property.

Here, the Board concluded that the variances would affect neighboring properties and potentially disrupt the spirit of the zoning ordinance. We find the Board's ruling authorized by law and supported by competent and substantial evidence on the record as a whole.

Judgment affirmed.

CRANDALL and GRIMM, JJ., concur.