STATE of Missouri, ex rel., HOLLY INVESTMENT CO., Appellant,

v.

BOARD OF ZONING ADJUSTMENT OF KANSAS CITY, Missouri, Respondent.

No. WD 41347.

Missouri Court of Appeals, Western District.

June 13, 1989.

James C. Bower, Jr., Kansas City, for appellant.

Richard N. Ward, City Atty., Kathleen A. Hauser, Asst. City Atty., Kansas City, for respondent.

Before SHANGLER, P.J., and NUGENT and LOWENSTEIN, JJ.

LOWENSTEIN, Judge.

Holly Investment Company, Inc. (appellant) filed a petition for certiorari in the Circuit Court of Jackson County seeking review of a decision by the Board of Zoning Adjustment of Kansas City (Board) denying the appellant's requested variance for its property (known as Meldonia, a residential care facility) located at 505 Olive Street in Kansas City. The circuit court found in favor of the Board.

The Meldonia is and has for many years been a group home to 47 elderly and mental patients. It has been licensed by the state. Most of the residents come from placements by Western Missouri Mental Health, probate commitments and other providers for mental health and elderly services. The monthly charge is about $600. The Codes Administrator of Kansas City classified the Meldonia as a "group home facility." Under § 39.080 of the Code of General Ordinances of Kansas City, a group home facility is described as a residential facility operated for the care of persons:

> (a) Who are handicapped due to a developmental disability where the disability is attributable to mental retardation, cerebral palsy, epilepsy, or other neurological conditions which are closely related to mental retardation and who require treatment similar to mental retardation; or
>
> (b) Who are in need of rehabilitation, habilitation or resocialization when their mental illness is stabilized;
>
> *     *     *     *     *     *

This designation requires 300 square feet of lot area per resident. Because Meldonia has only 4,920 square feet, the zoning ordinance permits a maximum of 16 residents. Meldonia is approximately 9,180 feet shy of the 14, 100 square feet required to house its 47 residents.

■ On August 14, 1987, a notice of violation was served by the Codes Administrator of Kansas City on Meldonia for "insufficient lot area." Meldonia appealed to the Board of Zoning Adjustment on two points: 1) Meldonia sought to have its classification as a "group home facility" changed to house more than 16 residents; 2) Meldonia also sought a zoning variance. The Board of Zoning Adjustment upheld the Code Administrator's classification of the Meldonia as a "group home facility" and denied the requested zoning variance. The owners of the Meldonia sought and were denied relief in circuit court. The appellant has not included review of the classification of Meldonia as a group home in the points relied on section of the brief

and denial of the requested change is considered abandoned. Rule 84.04. *Jones v. Eagan,* 715 S.W.2d 596 (Mo.App.1986).

The appellant contends that the trial court erred in denying its petition because: 1) the Board's denial of the variance was arbitrary, capricious and not supported by competent and substantial evidence; 2) the Board improperly based its decision on the nature of the residents of Meldonia and their relationship with the neighborhood.

The Board's decision denying the variance will be affirmed if it was authorized by law and if the decision is supported by competent and substantial evidence upon the whole record. *Ogawa v. City of Des Peres,* 745 S.W.2d 238, 242 (Mo.App.1987). In determining whether there was substantial evidence supporting the decision, the evidence, and its reasonable inferences are viewed in a light most favorable to the findings. *Id.* This court may not substitute its judgment for that of the Board if the Board's decision meets those criteria. *Volkman v. City of Kirkwood,* 624 S.W.2d 58, 59 (Mo.App.1981).

This case then boils down to the appellant's plea to allow it a variance to operate the home with far more residents than is allowed by ordinance. The appellant claims it cannot economically operate this longstanding home with 16 residents, and without relief in the form of a variance will have to close Meldonia and send its residents elsewhere.

"Whether application of a zoning ordinance to a particular tract is reasonable and constitutional, or arbitrary and unconstitutional, depends upon the facts, circumstances, and the evidence in each case ... The burden of proving unreasonableness is on the person challenging the ordinance." *Ogawa v. City of Des Peres, supra,* at 242. (Citations omitted). The variance procedure "fulfil[s] a sort of 'escape hatch' or 'safety valve' function for individual landowners who would suffer special hardship from the literal application of the ... zoning ordinance." *Matthew v. Smith,* 707 S.W.2d 411, at 413 (Mo. banc 1986). (*quoting City & Borough of Juneau v. Thibodeau,* 595 P.2d 626, 633 (Alaska 1979)).

The type of variance involved here is a "non-use variance."

A use variance is one which permits a use other than one proscribed by the zoning ordinance in the particular district; it permits a use which the ordinance prohibits. A nonuse variance authorizes deviations from restrictions which relate to a permitted use, rather than limitations on the use itself.... *Matthew v. Smith,* 707 S.W.2d at 413 (*quoting* 3 A. Rathkopf, The Law of Zoning and Planning § 38.01 (1979)).

The language from the following cases is helpful in a critical analysis of the review of this decision.

The Board's authority to grant a variance is statutorily based upon a showing of "practical difficulty or unnecessary hardship." *See:* § 89.090.1(3) RSMo (1986) and Des Peres Zoning Ordinance § 435.040(3). This power and authority must be exercised sparingly and only under exceptional circumstances. *Matthew v. Smith,* 707 S.W.2d at 413. Such application is essential in order to maintain the integrity of the zoning code.

*Ogawa, supra,* at 242.

To establish an area or nonuse variance the conditions may be *"slightly* less rigorous than for unnecessary hardship." *Matthew, supra,* at 416.

The phrase "practical difficulties or undue hardships" as contained in the Zoning Code does not refer to conditions personal to the owner of the land in question but rather refers to the conditions especially affecting the lot in question. Further, the practical difficulty or undue hardship relied on as a ground for a variance must be unusual or peculiar to the property involved and must be different from that suffered throughout the zone or neighborhood.

*Brown v. Beuc,* 384 S.W.2d 845, 852 (Mo. App.1964). *See also* § 89.090.1(3), RSMo 1980.

To determine economic hardship, the record must show that "(1) the land in question cannot yield a reasonable return if used only for a purpose allowed in that

zone; (2) that the plight of the owner is due to unique circumstances and not to the general conditions in the neighborhood which may reflect the unreasonableness of the zoning ordinance itself; and (3) that the use to be authorized by the variance will not alter the essential character of the locality." *Matthew v. Smith, supra,* 707 S.W.2d 411, at 416–17 (*quoting Otto v. Steinhilber,* 282 N.Y. 71, 24 N.E.2d 851, 853 (1939)).

The burden of proving practical difficulties is on the appellant. There is no specific definition of the term "practical difficulty." Whether they exist in a particular case is "a question of fact as to which the Board is given discretion to be exercised within the guidelines of the zoning legislation ... 'The power to grant a variance must be exercised sparingly and in keeping with the spirit of the zoning plan and the public welfare.'" *Volkman, supra,* 624 S.W.2d 58, at 61 (citations omitted).

■ The appellant did not meet its burden. The record is devoid of any sufficient evidence to establish "practical difficulties." Mr. Friedman, the Director of Meldonia, was the appellant's primary witness. He testified that the Meldonia cost anywhere from $181,000 to $200,200 to run. If only 16 residents were allowed, Meldonia would only receive an annual income of $115,200. Given that operating loss, the Meldonia would have to close down.

An "administrative agency may base its decision solely on a finding of lack of credible testimony, though such testimony is uncontradicted or unimpeached...." *Missouri Church of Scientology v. State Tax Commission,* 560 S.W.2d 837, 843 (Mo. banc 1978). Even if this court gives the appellant the benefit of the doubt, there were simply not enough definite figures supplied on the cost of running the Meldonia to warrant reversal of the Board's decision.

Friedman stated that he came up with "a quick estimate as we were sitting having a cup of coffee before we came to the meeting ... I have no facts or figures." Those estimates reflected that to run the facility it would cost $120,000 for labor per year, $36,000 for food, $20,000 for utilities and $4000 for maintenance.

Friedman only provided one set of figures for the cost of running the Meldonia. Obviously, those figures would fluctuate depending on the amount of people staying at the facility at any given time. Without exact figures, it was impossible to determine how many people would have to reside in the Meldonia so that the facility would not lose any money. Without establishing that figure, it was impossible to determine the level of economic hardship. The Board's chairman noted his frustration with the indefiniteness of information provided:

I would like to make another observation on my behalf and my feelings, that the testimony given which I was trying to establish was the financial difficulties that would be incurred by the owner and whether or not the break even point was 42, 22, whatever, I was not satisfied that the information was conveyed to determine that really this variance would support ... What I am saying, you are asking for or the applicant is asking for roughly two-thirds more which I would point out is three times. There has got to be some financial division there that supports this type of facility. I think that is something that has not been reached yet.

While this court feels concern for those residents of the Meldonia who might be effected by the Board's decision, there simply was not enough evidence presented to overcome the burden placed on those who request a variance. And, especially so here, where the variance would allow a facility with less than 5000 square feet of land to operate where other tracts would have to be 14,100 square feet in size. This court would also like to take this opportunity to reiterate the economic hardship is not the determinative factor in a finding of "practical difficulties;" rather, it is merely a consideration.

Finally, the appellant charges that the Board improperly based its decision on the nature of the residents of Meldonia and their relationship to the neighborhood.

That issue was not raised and has not been preserved, but would not afford relief. The appellant points to testimony of the Board about the "problem was the clientele" of Meldonia, and this prompted the neighbors complaints and did not supply support to the Board's ultimate decision. There was sufficient and competent evidence to support the decision.

The judgment of the trial court in affirming the respondent is affirmed.